IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

| | | |
|---|---|---|
| JACOB N., | ) | |
| Plaintiff, | ) | Civil Action No. 5:17-cv-00057 |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of | ) | By:    Joel C. Hoppe |
| Social Security, | ) |        United States Magistrate Judge |
| Defendant. | ) | |

Plaintiff Jacob N. asks this Court to review the final decision of the Acting Commissioner

of Social Security ("Commissioner"), denying his application for disability insurance benefits

("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401–434. The case is

before me by the parties' consent under 28 U.S.C. § 636(c). ECF No. 7. Having considered the

administrative record, the parties' briefs, and the applicable law, I cannot find that substantial

evidence supports the Commissioner's final decision. Accordingly, the decision must be reversed

and the case remanded under the fourth sentence of 42 U.S.C. § 405(g).

I. Standard of Review

The Social Security Act authorizes this Court to review the Commissioner's final

decision that a person is not entitled to disability benefits. 42 U.S.C. § 405(g); *see also Hines v.

Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006). The Court's role, however, is limited—it may not

"reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for

that of agency officials. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). Instead, a court

reviewing the merits of the Commissioner's final decision asks only whether the Administrative

Law Judge ("ALJ") applied the correct legal standards and whether substantial evidence supports

the ALJ's factual findings. *Meyer v. Astrue*, 662 F.3d 700, 704 (4th Cir. 2011); *see Riley v. Apfel*,

88 F. Supp. 2d 572, 576 (W.D. Va. 2000) (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 98–100 (1991)).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a mere scintilla" of evidence, *id.*, but not necessarily "a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence review takes into account the entire record, and not just the evidence cited by the ALJ. *See Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487–89 (1951); *Gordon v. Schweiker*, 725 F.2d 231, 236 (4th Cir. 1984). Ultimately, this Court must affirm the ALJ's factual findings if "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (quoting *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996)). However, "[a] factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A person is "disabled" within the meaning of the Act if he or she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *accord* 20 C.F.R. § 404.1505(a). Social Security ALJs follow a five-step process to determine whether a claimant is disabled. The ALJ asks, in sequence, whether the claimant (1) is working; (2) has a severe impairment that satisfies the Act's duration requirement; (3) has an impairment that meets or equals an impairment listed in the Act's regulations; (4) can return to his or her past relevant work based on his or her residual functional capacity; and, if not (5) whether he or she can

perform other work. *See Heckler v. Campbell*, 461 U.S. 458, 460–62 (1983); *Lewis v. Berryhill*, 858 F.3d 858, 861 (4th Cir. 2017); 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof through step four. *Lewis*, 858 F.3d at 861. At step five, the burden shifts to the agency to prove that the claimant is not disabled. *See id.*

## II. Procedural History

Jacob N. filed his DIB application on November 9, 2015, alleging disability because of a right ankle problem, back problems, muscle spasms, vision problems, and high blood pressure. Administrative Record ("R.") 78, ECF No. 10. He alleged that he became disabled as of July 1, 2014, at which time he was almost fifty-three years old. R. 77–78. Disability Determination Services ("DDS"), the state agency, denied the application initially on June 2, 2016, R. 77–90, and upon reconsideration later that month, R. 91–102.

On October 7, 2016, Jacob N. appeared with counsel at an administrative hearing before ALJ H. Munday, where he testified about his medical conditions and alleged functional limitations. R. 30–76. In addition, a vocational expert ("VE"), Gerald Wells, Ph.D., testified at the hearing. R. 62–73; *see* R. 14, 242. On October 27, 2016, Jacob N. filed a post-hearing memorandum challenging aspects of VE Wells's hearing testimony. R. 265–70. These objections were based in part on differences between VE Wells's opinions and the opinions of Kerri Moran, a vocational rehabilitation counselor retained by Jacob N. *See* R. 265–66. Jacob N.'s representative had submitted Moran's opinions to ALJ Munday prior to the October 7, 2016 hearing along with a pre-hearing memorandum. *See* R. 252–64.

On December 20, 2016, ALJ Munday issued an unfavorable decision. R. 11–24. At steps two and three, she found that Jacob N.'s "degenerative disc disease, osteoarthritis of the right ankle, and gout" were severe medical impairments, but that they did not meet or medically equal

any of relevant Listings. R. 16–18. ALJ Munday then evaluated Jacob N.'s residual functional capacity ("RFC") and found that he could perform "light work"[1] that involved four hours standing/walking during an eight-hour workday; frequently balancing and pushing/pulling with the right leg; occasionally stooping, kneeling, crouching, crawling, and climbing ramps/stairs; and never climbing ladders, ropes, or scaffolds. R. 18. Based on this RFC finding and VE Wells's hearing testimony, ALJ Munday concluded that Jacob N. was not disabled after July 1, 2014, because he could have returned to his past relevant work as a "residence counselor" as that occupation is generally, but not actually, performed. R. 22–24. In making this determination, ALJ Munday overruled the objections to VE Wells's opinions asserted in Jacob N.'s post-hearing memorandum. *See* R. 22–24. She did not consider at step five whether Jacob N. could have performed other occupations available in the national economy. R. 23–24. The Appeals Council denied Jacob N.'s request for review, R. 1–5, and this appeal followed.

## III. Discussion

On appeal, Jacob N. challenges ALJ Munday's disability determination on the basis that she arbitrarily rejected the opinions of Moran in favor of those of VE Wells. Pl.'s Br. 3, ECF No. 18. In particular, Jacob N. argues that ALJ Munday erred at step four by improperly classifying his past relevant work and by failing to consider Moran's opinion that Jacob N.'s past relevant work was a "composite job" under Social Security Ruling "SSR" 82-61. *See id.* (citing SSR 82-61, 1982 WL 31387, at *2 (Jan. 1, 1982)). The Court agrees that the ALJ erred at step four.

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b); *see* R. 18. A person who can meet these modest lifting requirements can perform light work only if he or she can also "do a good deal of walking or standing, or do some pushing and pulling of arm or leg controls while sitting." *Hays v. Sullivan*, 907 F.2d 1453, 1455 n.1 (4th Cir. 1990). Light work typically requires a total of six hours of standing and walking during an eight-hour workday. SSR 83-10, 1983 WL 31251, at *5–6 (Jan. 1, 1983); *see Neal v. Astrue*, Civ. No. JKS-09-2316, 2010 WL 1759582, at *2 (D. Md. Apr. 29, 2010); R. 18.

*A.      Background*

*1.  Jacob N.'s Job History*

Jacob N. was employed in a number of different positions in the fifteen years leading up to his alleged disability onset of July 1, 2014. *See* R. 204–11; 20 C.F.R. § 404.1560(b)(1) (indicating that "past relevant work" only includes work done within the past fifteen years). These positions included a forklift operator at a chicken plant from 2000 to 2002, R. 82, 84; a mixer at Hershey's Chocolate from 2002 to 2007, R. 84, 246; and a special-needs counselor at a boy's home from 2011 to 2014, R. 81, 246.

The last of these positions is pertinent to our analysis here as it is the basis for the ALJ's step four conclusion that Jacob N. was not disabled because he could return to his past relevant work as generally performed, and it is the focus of Jacob N.'s claim that his past work constituted a composite job under the social security rulings. Jacob N. performed the counseling position for an entity called Liberty Point, a residential boys' home in Staunton, Virginia. R. 37, 81, 246. In a submission to the state agency, he described the duties of this position: "I made sure kids were counseled and had recreation." R. 205 (spelling corrected). He wrote reports, but did not supervise others. *Id.* At the administrative hearing, he characterized his job title as a "mental health specialist." R. 38. On any given day, he was assigned four children and given responsibilities including counseling, transportation, and general oversight. *See* R. 38–39, 81.

An aspect of Jacob N.'s position at Liberty Point was the maximum amount of physical exertion required. *See* R. 64–65. At the administrative hearing, Jacob N. testified that he was assigned to a unit with "most of the agile kids" and that on any given day he might have to physically restrain kids who were insubordinate. R. 38–39; *see also* R. 205. He suggested that

this might happen eight to twelve times each day. R. 38–39. At times this aspect of his job required that he lift one hundred pounds or more. R. 205.

Jacob N. further testified that he quit working at Liberty Point in 2014 because he thought his back and right knee pain prevented him from performing his job duties, including physically restraining the children under his care. R. 45–46. He further testified that he had applied for several jobs since leaving that position, but he had not received any interviews nor did he believe he was capable of performing many of the jobs for which he had applied. R. 48–49.

2.  *Opinions of the Vocational Experts*

During the administrative hearing before ALJ Munday, VE Wells testified as to Jacob N.'s past work experience. As it concerned the counselor position, VE Wells testified that Jacob N.'s description of this job as it was actually performed would render the work classified at the heavy exertional level. R. 64. The VE further testified, however, that the Department of Labor's *Dictionary of Occupational Titles* ("DOT") would classify Jacob N.'s job at Liberty Point as "Residence Counselor," which was generally performed at the sedentary exertional level. R. 64–65.

ALJ Munday next asked VE Wells to consider a hypothetical individual of the claimant's age, education, and past work experience who had the same "limited light" RFC as described in her written decision denying Jacob N.'s claim.  *See* R. 18, 22, 67. ALJ Munday asked VE Wells whether such a hypothetical individual would be able to perform any of Jacob N.'s prior work. R. 67. In response, VE Wells opined that the only past work that such an individual would be able to perform was the "Residence Counselor" job as it is listed in the DOT. R. 67. VE Wells noted that the person would not be able to return to that position as it was actually performed. R. 69.

ALJ Munday also provided counsel for Jacob N. an opportunity to question VE Wells. R. 72. Counsel did not question VE Wells about his finding that Jacob N.'s past work included the job of residence counselor. Instead, counsel simply asked VE Wells about the sources he used for determining the number of jobs available nationally and whether VE Wells made any adjustments to those numbers. *Id.*

Several weeks after the administrative hearing, Jacob N. submitted a post-hearing memorandum in which he objected to various opinions asserted by VE Wells. R. 265–70. Most pertinent to the present dispute, Jacob N. objected to VE Wells's classification of his past relevant work as "residence supervisor."[2] R. 265. Jacob N. relied primarily on the written opinion of Moran, which he had appended to a pre-hearing memorandum. *See* R. 252–64. In this opinion, Moran concluded that the residence supervisor position as defined in the DOT did not accurately reflect the duties of Jacob N.'s prior job as he actually had performed it. R. 256. Moran further opined that she was unable to locate any DOT title that matched Jacob N.'s job duties *Id.* Instead, Moran found that significant elements of his job existed within several DOT occupations, including "Residence Counselor," "Recreational Therapist," Teacher, Learning Disabled," and "Psychiatric Technician." R. 257. Accordingly, Moran concluded that Jacob N.'s past relevant work was a "composite job." *Id.*

### 3. *The ALJ's Decision & Summary of Relevant Evidence*

In the RFC assessment, ALJ Munday concluded that Jacob N. could perform light work, with additional restrictions on standing, walking, climbing, postural activities, and pushing and

---

[2] At the administrative hearing, VE Wells repeatedly referred to Jacob N.'s past relevant work experience as a "residence counselor." R. 64–71. Nonetheless, VE Wells identified the DOT code for this position as 187.167-186, R. 64, which is the code for "Residence Supervisor." Dep't of Labor, Office of Admin. Law Judges, *Dictionary of Occupational Titles* § 187.167-186 (1977). "Residence Counselor" and "Residence Supervisor" are coded as two separate positions in the DOT. *Compare id., with* DOT § 045.107-038. ALJ Munday's written decision cited the DOT code for "Resident Supervisor," which was the same code that VE Wells mentioned at the hearing. R. 22.

pulling with the right lower extremity. R. 18. The ALJ explained that Jacob N. allegedly suffered

from right ankle problems, back problems, back muscle spasms, vision problems, and high blood

pressure. R. 19. In 2015, Jacob N. had begun to visit medical providers with complaints of

ongoing back pain. *See* R. 19, 388, 408–09. He also complained in July 2015 about a right ankle

problem related to an earlier injury. R. 408–09.

In September 2015, an X-ray of Jacob N.'s right ankle showed moderate degenerative

osteoarthritis. R. 355. Jacob N. began physical therapy for his ankle in December 2015, R. 423,

and during that same month he first contacted his primary care provider with concerns about

gout, R.509. He followed up about his gout in March 2016 and also reported during this visit that

he was experiencing back and leg pain. R. 499.

In May 2016 an X-ray showed "mild" degenerative changes in Jacob N's thoracic spine,

R. 541, a diagnosis that was confirmed by the results of an MRI in September 2016, R. 726. The

MRI further showed evidence of degenerative changes and a bulging disc in Jacob N.'s lumbar

spine. R. 727. During that same month Jacob N. began physical therapy where he was noted to

have "no limitation" in his ability to transition from sitting to standing, but "mild limitation" in

sitting and "moderate limitation" in walking, bending, and sleeping. R. 829. In October 2016,

Jacob N.'s pain had decreased, but he did experience an increase in pain after he decided to run a

mile. R. 817, 819.

ALJ Munday ultimately found that the degree of severity of Jacob N.'s alleged symptoms

lacked support and was inconsistent with other evidence of record. R. 20. The ALJ found that

Jacob N.'s treatment regimen was "routine and conservative overall" and not the type of

treatment one would expect from a totally disabled individual. R. 20–21. ALJ Munday also noted

evidence from the record suggesting that Jacob N. was capable of performing more activity than

he alleged. In particular, her decision referenced a September 22, 2015 progress note in which Jacob N. claimed to be working once a week at the Fishburne Military Academy, as well as Jacob N.'s testimony at the hearing that he was able to take care of his granddaughter multiple times each week. R. 21. ALJ Munday further found that Jacob N.'s recent efforts to apply for jobs suggested that he did not believe himself to be fully disabled, which weighed against a finding of disability. *Id.*

At step four, ALJ Munday accepted the testimony of VE Wells that a hypothetical person with Jacob N.'s vocational profile and "limited light" RFC would be able to perform his past relevant work as a residence counselor. *See* R. 22, 64–67. The ALJ acknowledged VE Wells's opinion that Jacob N. actually performed this work at a much higher exertion level than is generally performed in the national economy. R. 22 (citing R. 64–65, 69). She relied, however, on VE Wells's testimony that a person with Jacob N.'s vocational profile and limited light RFC would be able to perform that job at the sedentary level as it was generally performed according to the DOT. *Id.* Thus, the ALJ found that Jacob N. was able to perform his past relevant work as a residence counselor as it is generally performed. *Id.*; *see* 20 C.F.R. § 404.1567(b) ("If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."). ALJ Munday did not make any specific findings about the physical and mental demands of the residence counselor position, other than to note that VE Wells had classified it as "sedentary, skilled, SVP 6, DOT # 187.167.186." *Id.*

As a final matter, ALJ Munday addressed various post-hearing objections that Jacob N. raised regarding VE Wells's testimony. R. 22–24. In pertinent part, the ALJ very briefly responded to the objection that VE Wells improperly classified Jacob N.'s past relevant work as

a "residence counselor" as opposed to a "composite job" as opined by Moran. *See* R. 23, 265. ALJ Munday stated that she "considered" Moran's opinions and "arguments regarding classification of [Jacob N.'s] past work as a residence counselor," but she did not discuss the substance of those opinions anywhere in her written decision before concluding that Moran's opinions deserved "little weight due to her lack of independence." R. 23 (concluding that Moran's opinions were "not independent" because "she was hired by the claimant's representative"); *see* R. 16–24.

B.    *Analysis*

Jacob N.'s only challenge to ALJ Munday's decision pertains to her finding at step four that Jacob N. could perform his past work as a residence counselor as generally performed. At step four, an ALJ considers whether a claimant can perform his past relevant work. 20 C.F.R. § 404.1520; *see also Thompson v. Astrue*, 442 F. App'x 804, 806 (4th Cir. 2011). The regulations define "past relevant work" as work that the claimant has done within the past fifteen years, that was substantial gainful activity, and that lasted long enough for the claimant to learn to do it. 20 C.F.R. § 404.1560(b)(1). "[A] claimant will be found 'not disabled' if he is capable of performing past relevant work either as he performed it in the past *or* as it is generally required by employers in the national economy." *Pass v. Chater*, 65 F.3d 1200, 1207 (4th Cir. 1995) (citing SSR 82-61, 1982 WL 31387). Accordingly, an ALJ does not necessarily need to conclude that a claimant is capable of performing the precise job he had previously performed so long as the claimant is able to perform the job as generally performed in the national economy. *See Getch v. Astrue*, 539 F.3d 473, 482 (7th Cir. 2008) ("[T]he ALJ need not conclude that the claimant is capable of returning to the precise job he used to have; it is enough that the claimant can perform jobs substantially like that one."); *Tovar v. Astrue*, No. 3:09cv100, 2009 WL

4067387, at *9 (E.D. Va. Nov. 23, 2009) (the tests for past relevant work "are disjunctive and a claimant is determined not to be disabled under either measure").

Although the claimant bears the burden of persuading the Commissioner that he cannot perform his past work "either as [he] actually performed it" or as it is "generally performed in the national economy," *Goodman v. Astrue*, 539 F. Supp. 2d 849, 850 (W.D. Va. 2008) (citing 20 C.F.R. § 404.1560(b)), the ALJ must make findings as to the physical and mental demands of the claimant's past work and discuss whether the person's RFC would permit him to return to the past job or occupation, *Prim v. Astrue*, No. 7:07cv213, 2008 WL 444537, at *6–7 (W.D. Va. Feb. 13, 2008) (citing *Winfrey v. Chater*, 92 F.3d 1017, 1025 (10th Cir. 1996)); SSR 82-62, 1982 WL 31386, at *3 (Jan. 1, 1982) ("[W]hether the claimant retains the functional capacity to perform past work . . . must be developed and explained fully in the disability decision.").

As a threshold matter, ALJ Munday's decision failed to identify any job duties or requirements associated with the "residence counselor" position that she found Jacob N. capable of performing. In order for the Court to engage in meaningful review of a disability determination made at step four, the ALJ must, at a minimum, explain the past job or identify the duties that the she finds the claimant has the RFC to perform. *See* 20 C.F.R. § 404.1560(b); SSR 82-61, 1982 WL 31387, at *1–2 (directing ALJ's at step four to determine "[w]hether the claimant retains the capacity to perform the functional demands and job duties of the job as ordinarily required by employers throughout the national economy."); *Prim*, 2008 WL 444537, at *6–7. Here, ALJ Munday asserted that she "compar[ed] the claimant's residual functional capacity with the physical and mental demands of this work". R. 22. She did not, however, identify the particular physical and mental demands of the job, other than to say it was sedentary, skilled, and SVP 6. *See Shealy v. Colvin*, Civ. Action No. 8:13-2383, 2015 WL 467726, at *14

(D.S.C. Feb. 4, 2015). Considering the questions raised by Jacob N. about the specific nature of the job he performed, and the evidence showing potential overlap in duties between multiple jobs, it was incumbent, at least in this case, for the ALJ to identify the duties that she determined Plaintiff's past relevant work entailed in order to support her finding that he in fact performed that particular job. *See Goodman*, 539 F. Supp. 2d at 852. Additionally, the DOT code that ALJ Munday cited for the "Residence Counselor" job she determined Jacob N. could perform was actually the code for "Residence Supervisor." *Compare* Dep't of Labor, Office of Admin. Law Judges, *Dictionary of Occupational Titles* § 187.167-186 (1977), *with id.* at § 045.107-038. At the administrative hearing, VE Wells also identified the code for "Residence Supervisor" even though he testified that Jacob N.'s past work was as a "residence counselor." R. 64–71. These omissions from and errors in the ALJ's decision fall short of her duties at step four and leave the Court with little guidance as to the demands or requirements of the past relevant position that the ALJ deemed Jacob N. was able to perform.

As his primary challenge to the ALJ's decision, Jacob N. takes issue with the ALJ's conclusion adopting VE Wells's opinion that his past relevant work is properly categorized as a residence counselor. He argues that his past relevant work should have been labeled as a "composite job." Pl.'s Br. 5. Social Security Ruling 82-61 defines a composite job as one that has "significant elements of two or more occupations and, as such, [has] no counterpart in the DOT." SSR 82-61, 1982 WL 31387, at *2. When a claimant's past relevant work is found to be a composite job, he will only be found "not disabled" where he is able to perform all parts of the composite job. *See Delgado v. Berryhill*, No. 3:17cv54, 2018 WL 1316198, at *17 (D. Conn. Mar. 14, 2018) (citing Program Operations Manual System ("POMS") at DI 25005.025); *Jones v. Colvin*, No. 3:15cv195, 2016 WL 786626, at *3 (E.D. Va. Feb. 4, 2016), *adopted by* 2016 WL

816792 (E.D. Va. Feb. 26, 2016). Moreover, because a composite job does not have a DOT counterpart, the ALJ's evaluation of a claimant's ability to perform his past work should not focus on a particular job as generally performed; instead, the ALJ should consult a vocation expert to assess the overlapping functions of multiple jobs. *See* SSR 82-61, 1982 WL 31387, at *2; *see also Jones*, 2016 WL 786626, at *3 (citing POMS DI 25005.020B).

In addressing Jacob N.'s objection to VE Wells's opinion that his prior relevant work was as a residence counselor (as opposed to a composite job), ALJ Munday summarily rejected Moran's conflicting opinion because she determined that it was "not independent" and that "her opinion [was] given little weight due to her lack of independence." R. 23. ALJ Munday's acceptance of VE Wells's opinion and summary dismissal of Moran's opinion falls short at step four because she did not elicit an explanation from VE Wells as to the discrepancy between the contrasting opinions, nor did she provide any legitimate reason for assigning "little weight" to Moran's opinion.

Where a VE's testimony is alleged to conflict with the DOT, SSR 00-4p instructs that the ALJ must "'elicit a reasonable explanation for' and 'resolve' conflicts between the expert's testimony and the [DOT]." *Pearson v. Colvin*, 810 F.3d 204, 208 (4th Cir. 2015) (quoting SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000)). "[T]he ALJ's duty to identify and resolve conflicts with the DOT is independent from any duty the [VE] may have to identify such conflicts, and . . . the ALJ's duty extends beyond simply asking the [VE] whether his testimony is consistent with the DOT." *Boone v. Colvin*, No. 7:15cv107, 2016 WL 4447820, at *4 (W.D. Va. Aug. 3, 2016) (citing *Pearson*, 810 F.3d at 208–09), *adopted by* 2016 WL 4482088 (W.D. Va. Aug. 23, 2016).

The Fourth Circuit has held that the ALJ's duty to independently identify conflicts between VE testimony and the DOT extends to any "apparent conflict." *Pearson*, 810 F.3d at 209. In other words, "the ALJ must identify where the expert's testimony seems to, but does not necessarily, conflict with the [DOT]." *Id.* This standard "embraces the reality that, in many cases, testimony may only *appear* to conflict with the [DOT], and the vocational expert may be able to explain that, in fact, no conflict exists." *Id.* "[I]f the ALJ does not elicit this explanation, then the expert's testimony cannot provide substantial evidence to support the ALJ's decision" at step four that the claimant is not disabled. *Id.* Accordingly, a VE's testimony that apparently conflicts with the DOT "can only provide substantial evidence if the ALJ has received this explanation from the expert and determined that the explanation is reasonable and provides a basis for relying on the testimony rather than the [DOT]." *Id.* at 209–10.

Moran's opinion, submitted to ALJ Munday ahead of the administrative hearing, raised a potential conflict between the vocational evidence and the DOT. Indeed, contrary to VE Wells's testimony that Jacob N.'s Liberty Point job was a "Residence Counselor" position under the DOT, R. 64–67, Moran opined that she was "unable to find any DOT title that matched [Jacob N.'s] duties, but found significant elements of his job within several occupations," R. 257. ALJ Munday did not mention Moran's opinion at the administrative hearing, nor did she ask VE Wells to explain or resolve the discrepancy between the two opinions. Nevertheless, the ALJ accepted and relied upon VE Wells's opinion in concluding that Jacob N.'s past relevant work at Liberty Point was that of a "Residence Counselor" under the DOT. R. 22. Where ALJ Munday failed to elicit an explanation from VE Wells as to the apparent conflict between his opinion and the DOT, VE Wells's opinion cannot provide substantial evidence for ALJ Munday's conclusions at step four. *See Pearson*, 810 F.3d at 209–10.

The Commissioner argues that ALJ Munday appropriately rejected Moran's opinion because she "was hired by Plaintiff's representatives" and "her report was neither independent [n]or impartial." Def.'s Br. 10, ECF No. 22. This assertion, however, does not overcome the ALJ's error in failing to identify a conflict between VE Wells's opinion and the DOT. Indeed, an ALJ is required to address such a discrepancy in any instance where a VE's opinion "appear[s] to conflict with the [DOT]…." *Pearson*, 810 F.3d at 209. In this case, the fact that Jacob N. raised the composite job argument ahead of the hearing was enough to at least create the appearance of a conflict such that it merited some discussion by the ALJ. This apparent conflict existed regardless of whether there could have been bias on the part of Jacob N.'s hired vocational specialist.

Additionally, the ALJ's mere pronouncement that Moran was "not independent" is not an adequate basis for refusing to assign weight to her opinion. Ultimately, an ALJ's decision "should include a discussion of which evidence [she] found credible and why, and specific application of the pertinent legal requirements to the record evidence. *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013). The ALJ was required to consider the opinion of a hired vocational counselor, just as he was required to consider any other evidence in the record. *See* 20 C.F.R. § 404.1520(a)(3) ("We will consider all evidence in your case record when we make a determination or decision whether you are disabled."). Statements about a claimant's past work––a key component in step four of the disability inquiry—constitute "evidence" under the regulations. *See* 20 C.F.R. § 1512(b) ("Evidence is anything you or anyone else submits to us or that we obtain that relates to your claim."). Here, ALJ Munday's summary dismissal of Moran's opinion does not rely on any particular portion of the record or cite any relevant law, but rather asserts, in conclusory fashion, that Moran's opinion "has been given little weight due to her lack

of independence." R. 23. This conclusion, without more, is not enough to enable to Court to engage in meaningful review.

Moreover, adequate evidence exists in the record to merit consideration of Moran's opinion that Jacob N.'s Liberty Point position was a composite job. First, the evidence is sufficient to suggest that Moran was qualified to opine on Jacob N.'s occupational history. Indeed, Moran's resume, submitted in Jacob N.'s pre-hearing memorandum, shows that she has approximately eight years of vocational counseling experience, including present and past vocational work with disabled individuals. R. 262–63. She also has a Master's degree in Counseling Psychology, and she completed master level courses in School and Community Counseling as well as Vocational Rehabilitation. R. 264.

Second, evidence in the record provides support for Moran's finding that Jacob N.'s position at Liberty Point was a composite job. As stated, composite jobs are those with "significant elements of two or more occupations and, as such, have no counterpart in the DOT." SSR 82-61, 1982 WL 31387, at *2. Moran's opinion asserted—and Jacob N. now argues in his brief—that his position at the boys' home was an amalgam of several different occupations, including Residence Counselor (DOT § 045.107-038), Recreational Therapist (DOT § 076.124-014), Teacher, Learning Disabled (DOT § 094.227-030), and Psychiatric Technician (DOT § 079.374-026). R. 257; *see also* Pl.'s Br. 7–10.

Evidence in the record shows that Jacob N.'s work at Liberty Point contained elements of the "Residence Counselor" position. The DOT describes this position as follows:

> supervisor; head resident, dormitory. Provides individual and group guidance services relative to problems of scholastic, educational, and personal-social nature to dormitory students: Suggests remedial or corrective actions and assists students in making better adjustments and in planning intelligent life goals. Plans and directs program to orient new students and assists in their integration into campus life. Initiates and conducts group conferences to plan and discuss programs and

> policies related to assignment of quarters, social and recreational activities, and dormitory living. Supervises dormitory activities. Investigates reports of misconduct and attempts to resolve or eliminate causes of conflict. May interview all dormitory students to determine need for counseling.

Dep't of Labor, Office of Admin. Law Judges, *Dictionary of Occupational Titles* § 045.107-038 (1977).

The record shows that Jacob N.'s work at Liberty Point involved counseling boys who lived in a dormitory-like setting and generally helping to facilitate better behavior in that environment. *See* R. 37–39, 81, 246. Accordingly, these activities appear to involve "significant elements" of the "Residence Counselor" position. SSR 82-61, 1982 WL 31387, at *2.

The record also contains evidence that Jacob N.'s Liberty Point job involved significant elements of a "Recreational Therapist" position that are not a part of the "Residence Counselor" position. The DOT describes this position as follows:

> Plans, organizes, and directs medically approved recreation program for patients in hospitals and other institutions: Directs and organizes such activities as sports, dramatics, games, and arts and crafts to assist patients to develop interpersonal relationships, to socialize effectively, and to develop confidence needed to participate in group activities. Regulates content of program in accordance with patients' capabilities, needs and interests. Instructs patients in relaxation techniques, such as deep breathing, concentration, and other activities, to reduce stress and tension. Instructs patients in calisthenics, stretching and limbering exercises, and individual and group sports. Counsels and encourages patients to develop leisure activities. Organizes and coordinates special outings and accompanies patients on outings, such as ball games, sightseeing, or picnics to make patients aware of available recreational resources. Prepares progress charts and periodic reports for medical staff and other members of treatment team, reflecting patients' reactions and evidence of progress or regression. May supervise and conduct in-service training of other staff members, review their assessments and program goals, and consult with them on selected cases. May train groups of volunteers and students in techniques of recreation therapy. May serve as consultant to employers, educational institutions, and community health programs. May prepare and submit requisition for needed supplies.

Dep't of Labor, Office of Admin. Law Judges, *Dictionary of Occupational Titles* § 076.124-014 (1977).

As with this position, Jacob N. provided job information that suggested he was involved in counseling, organizing recreation, and otherwise overseeing the children. Additionally, he described the job as a "mental health specialist." R. 38. Moreover, the record suggests that Jacob N. prepared daily progress reports of boys' activities, consistent with the reporting element in the DOT description. *See* R. 81, 205.

Finally, the record provides some evidence to support the proposition that Jacob N.'s Liberty Point position involved significant elements of a Psychiatric Technician job that were not part of other positions.[3] The DOT describes this position as follows:

> Provides nursing care to mentally ill, emotionally disturbed, or mentally retarded patients in psychiatric hospital or mental health clinic and participates in rehabilitation and treatment programs: Helps patients with their personal hygiene, such as bathing and keeping beds, clothing, and living areas clean. Administers oral medications and hypodermic injections, following physician's prescriptions and hospital procedures. Takes and records measures of patient's general physical condition, such as pulse, temperature, and respiration, to provide daily information. Observes patients to detect behavior patterns and reports observations to medical staff. Intervenes to restrain violent or potentially violent or suicidal patients by verbal or physical means as required. Leads prescribed individual or group therapy sessions as part of specific therapeutic procedures. May complete initial admittance forms for new patients. May contact patient's relatives by telephone to arrange family conferences. May issue medications from dispensary and maintain records in accordance with specified procedures. May be required to hold state license.

Dep't of Labor, Office of Admin. Law Judges, *Dictionary of Occupational Titles* § 079.374-026 (1977).

---

[3] Though Jacob N. also argues that "Teacher, Learning Disabled" should be a component of his composite job, the Court questions whether the record supports a conclusion that his Liberty Point position contained significant elements of this job that were not captured in the other positions discussed. *See* Dep't of Labor, Office of Admin. Law Judges, *Dictionary of Occupational Titles* § 094.227-030 (1977). However, composite jobs need only contain "significant elements of *two or more* occupations," SSR 82-61, 1982 WL 31387, at *2 (emphasis added). Accordingly, Jacob N. need not establish that all of the named positions were part of the composite job. Ultimately, this assessment will need to be made by the ALJ on remand with the assistance of vocational testimony.

Moran identified a key component of the "Psychiatric Technician" job as part of Jacob N.'s composite position as it involved "interven[tion] to restrain violent or potentially violent or suicidal patients by verbal or physical means as required." *Id.*; *see also* R. 257. Jacob N. testified at the administrative hearing and listed in his initial disability application that his job required him to physically restrain unruly residents of the mental health facility in which he worked. *See* R. 38–41, 81. This essential element of the psychiatric technician job was a unique aspect of his work at Liberty Point, distinguishing it from other types of positions into which his job might otherwise fall, such as the "Residence Counselor" position.

Accordingly, evidence in the record suggests that Jacob N.'s Liberty Point job could have involved significant elements of different DOT positions such that it could not be fairly characterized as a single position. The ALJ should have considered whether Jacob N.'s past relevant work was a composite job and developed relevant vocational evidence about it. Where past relevant work is considered a "composite job," the ALJ may find a claimant "not disabled" at step four only if she concludes that the claimant can perform all elements of the composite job. *See Delgado*, 2018 WL 1316198, at *17; *Jones*, 2016 WL 786626, at *3. The ALJ's failure to develop relevant vocational evidence and properly consider Moran's opinion undermines her finding at step four that Jacob N. could perform his past relevant work.

The Commissioner argues that the ALJ is not required to consider whether a claimant can return to a particular past job, but whether he can return to such a job as it is generally performed. Def.'s Br. 9. Additionally, the Commissioner argues that Jacob N. "has provided no evidence substantiating that he could not meet the sedentary demands of his past job as a residence counselor as it is generally performed." *Id.* at 10. Though this argument may correctly characterize part of the step four analysis, it fundamentally misapprehends the nature of Jacob

N.'s argument on appeal. Indeed, the "composite job" test is essentially a threshold inquiry that requires an ALJ to first determine the particular job that will be used as part of the step four analysis. Where a job is determined to be a composite job, the distinction between a job "as actually performed" and "as generally performed" is a non-issue because, by definition, composite jobs "have no counterpart in the DOT." SSR 82-61, 1982 WL 31387, at *2. Indeed, the Social Security Program Operations Manual System (POMS), provides that, "[a] composite job does not have a DOT counterpart, so do not evaluate it at the part of step 4 considering work "as generally performed in the national economy." POMS, DI 25005.025; *see also Jones*, 2016 WL 786626, at *3 (noting that an ALJ should not evaluate a job using the "as generally performed in the national economy" test where the he determines that a claimant's past work constitutes a composite job).

Finally, the Commissioner argues that past relevant work "refers to the type of job, not to idiosyncratic duties that the employer may have imposed." Def.'s Br. 9. Perhaps the ALJ could have properly determined that Moran's opinion was off base because the job that Jacob N. actually performed was simply a single DOT position (e.g., a "Residence Counselor" position) with some heightened duties, rather than a composite of several different DOT positions. Such an argument, however, would necessarily need to be fleshed out in the ALJ's decision and supported by substantial evidence in the record. *See Radford*, 734 F.3d at 295. Where the ALJ failed to advance such a position, we decline to do so for her. *See Golembiewski v. Barnhart*, 322 F.3d 912, 915 (7th Cir. 2003) ("general principles of administrative law preclude the Commissioner's lawyers from advancing grounds in support of the agency's decision that were not given by the ALJ."). Accordingly, the Commissioner's argument is rejected.

IV. Conclusion

For the foregoing reasons, I find that substantial evidence does not support the Commissioner's final decision. Accordingly, the Court will **DENY** the Commissioner's Motion for Summary Judgment, ECF No. 21, **REVERSE** the Commissioner's final decision, **REMAND** the case for further proceedings under the fourth sentence of 42 U.S.C. § 405(g), and **DISMISS** this case from the Court's active docket.

The Clerk shall send a copy of this Memorandum Opinion to all counsel of record.

ENTER: September 28, 2018

Joel C. Hoppe
United States Magistrate Judge